

U. S. Department of Justice

*United States Attorney*
*District of Maryland*

*Michael F. Davio*　　　　　　　　　　　　*Suite 400*　　　　　　　　　　*DIRECT: 410-209-4985*
*Special Assistant United States Attorney*　　*36 S.Charles Street*　　　　*MAIN: 410-209-4800*
*Michael.Davio@usdoj.gov*　　　　　　　　*Baltimore, MD 21201-3119*

July 3, 2020

The Honorable Catherine C. Blake
United States District Judge
101 West Lombard Street
Baltimore, MD 21201

**FILED VIA ECF AND INTEROFFICE MAIL**

    Re:   *United States v. Donte Raymont Powell*,
           Criminal No. CCB-18-0399

Judge Blake:

    The Government writes this letter in advance of the Defendant's sentencing, scheduled for July 8, 2020. As set forth more fully below, the Government requests that Court sentence the Defendant to **12** months incarceration, and that he be ordered to pay **$117,025** in restitution.

    I.    Facts

    On December 17, 2019, the Defendant pleaded guilty to Counts One and Six of the Indictment, conspiracy to commit bank fraud and bank fraud, in violation of 18 U.S.C. §§ 1349 and 1344, for his role in a scheme to purvey so-called "auto conversion loans."

    In approximately June of 2013, S.F., now deceased, organized a scheme to obtain auto conversion loans through the use of fictitious car dealerships he owned or controlled, and bank accounts he established in the names of those dealerships. S.F. or his associates would use the dealerships' bank accounts to cash loan checks and disburse loan proceeds. In total, S.F. and his associates obtained over $1.2 million in auto conversion loan proceeds over approximately 35 transactions. In addition to receiving a fraudulent auto loan himself, the Defendant operated one of S.F.'s fictitious "dealerships," Po-Well Auto, and processed four fraudulent auto loans through a bank account he opened in the dealership's name.

    The Defendant's involvement in the scheme began in June 2013, when he fraudulently applied for and was granted an auto loan in the amount of $22,458 for the purported purchase of a 2012 Toyota Camry from S.F.'s fictitious auto dealership, FPS Auto. S.F. deposited the loan check in a bank account titled to FPS Auto. S.F. then issued three checks to the Defendant totaling $17,500, and none exceeding $10,000. In the memo line of the checks, S.F. wrote, "Toyota Camry – Refund," "Car Refund," and "Refund," respectively. S.F. kept the remainder of

the proceeds for himself. FPS Auto never owned the Toyota Camry, and The Defendant never purchased it.

In August 2013, the Defendant incorporated Po-Well Auto as a limited liability company in Maryland, and also opened a bank account in the business's name at Bank of America from which proceeds from fraudulent auto loans, like the one from which he benefitted, would be disbursed. Between April 2014 and November 2014, the Defendant processed the loan proceeds of at least four fraudulent auto loans using the Po-Well Auto account. In each instance, S.F. or one of his associates would submit to the lending banks a forged invoice reflecting the purported sale of a vehicle to the borrower by Powell Auto of Dravosburg, Pennsylvania, a real car dealership unaffiliated with the scheme, along with other fraudulent documentation of employment and income. The banks would then issue the loan checks in the names of the borrower and Powell Auto. The Defendant would then deposit the loan checks in the Po-Well Auto bank account, and disburse the borrowers' shares of the loan proceeds to the borrowers, and keep the balance for himself. Oftentimes, the disbursements were made to the borrowers in increments of less than $10,000, likely to evade bank reporting requirements.

In total, the Defendant processed $132,264 in fraudulent auto loan proceeds through the Po-Well Auto bank account, of which he kept $23,316, and combined with the loan he obtained for himself, resulted in a loss to banks of $154,722.

II.     Sentencing Guidelines

A.  Guidelines Calculation.

The base offense level for Count 1, conspiracy to commit bank fraud is **7**. U.S.S.G. §§ 2X1.1(a), 2B1.1(a)(1). There is a **10**-level[1] enhancement due to a loss of between $150,000 and $250,000. 2B1.1(b)(1)(F).

Counts 1 and 6 group. U.S.S.G. 3D1.2(d).

There is a **2**-level downward adjustment because the Defendant clearly accepted responsibility, and the Government will move at sentencing for an additional **1**-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty, pursuant to U.S.S.G. § 3E1.1(b).

As a result, the Defendant's final adjusted offense level is **14**.[2] According to the Presentence Investigation Report (PSR) (ECF No. 139), the Defendant has 0 criminal history points, placing him in Criminal History Category **I**, resulting in a sentencing guideline range of **15-21** months. PSR, Paragraph 38.

B.  Minor Participant Reduction Does not Apply.

---

[1] In its plea letter, the Government calculated an 8-level enhancement due to the amount of loss, however the loss amount from the loan for which the Defendant himself applied was erroneously omitted from that calculation.
[2] The Government indicated in its plea letter that it intended to seek a 3-level enhancement for the Defendant's role in the offense, however, the Government instead notes the Defendant is subject to an upward departure as a manager of assets of the conspiracy. *See*, Section III, *infra*.

The Defendant, in his memorandum ("Defense Memorandum") (ECF no. 172), seeks a 2-level reduction for his claimed role as a "minor participant," pursuant to U.S.S.G. § 3B1.2(b). Defense Memorandum at 9. This reduction applies in cases where defendants are "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n. 5).

Among the factors the Court must consider when evaluating whether the guideline applies are,

> (i) the degree to which the defendant understood the scope and structure of the criminal activity; …
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.,* comment. (n. 3(C)).

The Defendant places his support for the application of this guideline on the highly dubious contention that his client was "duped" into participating in the scheme, and that S.F. took advantage of the Defendant's "eagerness to sell cars." Defense Memorandum at 9. This is plainly inconsistent with the facts. To the contrary, the facts show that the Defendant knew *exactly* what he was doing, as he had fraudulently applied for and received the proceeds of an auto loan himself for a car he did not purchase from a car dealership that didn't exist just two months before he established a fictitious car dealership of his own, and opened a bank account in that dealership's name. The Defendant then capably executed the business of the conspiracy using that fictitious business and bank account. Clearly, the Defendant "understood the scope and structure of the criminal activity." U.S.S.G. § 3B1.2, comment. (n. 3(C)(i)).

Moreover, the Defendant was not just a borrower, or "customer" in the scheme, but was an operator or "employee" of the scheme. In this role, he was entrusted with large sums of money, as well as ensuring that proceeds were disbursed appropriately, and in a manner that would evade bank reporting requirements. The Defendant also profited from his involvement in the scheme, retaining over $23,000 in fraudulent loan proceeds. Thus, the Defendant's "participation in the commission of the criminal activity" and "the degree to which the defendant stood to benefit from the criminal activity" clearly demonstrate that the 2-level minor participant reduction does not apply here.

### III.    Section 3553(a) Factors

The Government, in consideration of the Sentencing Guidelines and the factors set forth at 18 U.S.C. § 3553(a), believes that a sentence of 12 months of incarceration is sufficient, but not greater than necessary to accomplish the objectives set forth in 18 U.S.C. § 3553(a). The "the nature and circumstances of the offense" are serious, however, the Government makes this below-guidelines recommendation in recognition of the statutory mandate to ensure consistency of sentencing among defendants charged with like conduct, and the fact that approximately six years have elapsed since the offense conduct occurred, during which time, the Defendant apparently has not reoffended.

The offense is very serious. The Defendant was an agent in a scheme that defrauded financial institutions of over $1.2 million, of which the Defendant personally facilitated over $132,000. Despite Defendant's claim that he was "duped," the Defendant was himself a borrower in the scheme as well, and was thus fully aware of the implications of his conduct. The Defendant profited from his criminal activity, receiving over $23,000 in ill-gotten loan proceeds, while the liability for these fraudulent loans was shouldered by the borrowers themselves. Moreover, the burden of the Defendant's and his coconspirators' actions are borne by the greater public as well. First time home buyers, for example, may be forced to pay more for their first mortgage, as banks raise rates to recoup losses due to fraud like the Defendant's. Taxpayers, too, pay more in taxes to compensate for banks writing off the fraudulent loans from their books.

In addition, the Defendant is subject to an upward departure from the guidelines sentence because he managed "property, assets, or activities" of the conspiracy. U.S.S.G. § 3B1.1, comment. (n. 2) In particular, the Defendant managed over $132,000 in fraudulent auto loan proceeds, and was responsible for cashing loan checks and disbursing the proceeds, which entailed numerous transactions, many of which were apparently structured to avoid bank reporting requirements. Of those proceeds, the Defendant retained over $23,000 for himself.

The Government acknowledges, however, that the offense conduct ended nearly six years ago, and the Defendant apparently has not reoffended since that time. The Government also acknowledges that 18 U.S.C. § 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." On December 6, 2019, the Court sentenced codefendant Robert Donaldson to one year and one day of incarceration for his role in the scheme. ECF No. 121. Like the Defendant, Donaldson facilitated loans for borrowers, albeit resulting in greater loss (approximately $400,000) than the Defendant. However, unlike Donaldson, whose primary role was to recruit borrowers for the scheme, the Defendant here managed assets of the conspiracy—over $132,000—and therefore carried greater responsibility than Donaldson. Thus, on balance, a comparable sentence of 12 months is appropriate.

IV.     Conclusion

For all of the foregoing reasons, the Government respectfully requests that this sentence the Defendant to 12 months of incarceration and enter an order of restitution in the amount of $117,025.

                    Respectfully submitted,

                    Robert K. Hur
                    United States Attorney

By:    Michael F. Davio
        Special Assistant United States Attorney

cc:     All Parties via ECF.